FILED

07/14/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0574

DA 25-0574

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 152N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JESSIE EMILIA STEWART,

      Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDC-2022-456
Honorable Christopher D. Abbott, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Brent W. Flowers, Beebe & Flowers, Helena, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Thad Nathan Tudor, Helena, Montana

      Kevin Downs, Lewis and Clark County Attorney, Rachel Raymond,
Deputy County Attorney, Helena, Montana

Submitted on Briefs:  April 22, 2026

Decided:  July 14, 2026

Filed:

_____
               Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Jessie Emilia Stewart (Stewart) appeals the April 2, 2024 denial of her Motion to Suppress entered in the First Judicial District Court, Lewis and Clark County.  We affirm.

¶3    On August 4, 2022, Helena police photographed a vehicle as it left the scene of a felony vandalism at a local church.  Officers posted the photographs to an internal police message board seeking to identify the owner of the vehicle.  The photographs depicted a white Chevrolet Lumina with "blacked-out wheels" and "distinctive markings by the driver's side taillight."  While patrolling on the night of September 5, 2022, Officer Jose Guerrero (Officer Guerrero) observed a vehicle which matched the photographs and followed the vehicle to a Wal-Mart parking lot.  There, Officer Guerrero approached the vehicle and told the driver, Stewart, that the vehicle was implicated in a crime and requested identification.  While waiting for dispatch to run Stewart's driver's license, Officer Guerrero ordered Stewart to exit the vehicle and wait at the rear bumper.  Dispatch informed Officer Guerrero that Stewart was on probation and driving on a suspended license.  Roughly six minutes after Officer Guerrero first contacted Stewart, other officers arrived at the scene and Officer Guerrero returned to his vehicle to review the vandalism report.

¶4 After several minutes of reviewing the report, Officer Guerrero looked through the windows of Stewart's vehicle and spotted a broken glass pipe of the type commonly used to smoke methamphetamine in plain view on the driver's side floorboard. An on-call Montana Probation and Parole officer (Probation) telephoned Officer Guerrero and informed him that Stewart had not been reporting, and, upon being informed about the pipe, authorized a search of Stewart's person and vehicle. In addition to the pipe, the search revealed a stolen handgun, baggies containing methamphetamine, multiple cell phones, and a scale. Stewart was arrested and placed on a probation hold. She was subsequently charged with, *inter alia,* criminal possession of dangerous drugs, criminal possession with intent to distribute, and criminal possession of drug paraphernalia.

¶5 On May 23, 2023, Stewart filed a motion in District Court to suppress the evidence discovered on her person and in her vehicle, alleging that Officer Guerrero lacked the necessary particularized suspicion to seize and investigate her and that Probation did not have reasonable suspicion to search her vehicle or person. The District Court denied this motion, finding that Officer Guerrero had the required particularized suspicion due to the similarity in appearance between Stewart's vehicle and the vehicle involved with the church vandalism. The District Court further found that the discovery of the methamphetamine pipe triggered reasonable suspicion that Stewart was violating the terms of her probation by using drugs, so the remainder of the seizure was a constitutional warrantless probationary search. Stewart pled guilty to criminal possession with intent to distribute, while reserving her right to appeal the District Court's denial of her Motion to Suppress.

¶6      Stewart now appeals, arguing that the District Court erred in finding that particularized suspicion existed and that Officer Guerrero unjustifiably expanded and prolonged the stop.  She alleges further error in the finding that insufficient reasonable cause existed for Probation to authorize a warrantless search of her person and her vehicle. We address each of these issues in turn.

**Lack of Particularized Suspicion**

¶7      A district court's ruling on a motion to suppress evidence is reviewed for clear error in the findings of fact, and for correctness in its interpretation of law.  *State v. Copelton,* 2006 MT 182, ¶ 8, 333 Mont. 91, 140 P.3d 1074.  "Lower court findings of fact are clearly erroneous if not supported by substantial evidence, the court misapprehended the effect of the evidence, or . . . we are firmly convinced that the court was otherwise mistaken." *State v. Stanley,* 2024 MT 271, ¶ 15, 419 Mont. 61, 558 P.3d 1147.  A district court's interpretation of law is reviewed de novo.  *Stanley,* ¶ 15.

¶8      Both the United States and Montana constitutions protect against unreasonable or warrantless searches and seizures, and evidence obtained in violation of those provisions is excluded from trial.  *State v. Elison,* 2000 MT 288, ¶ 15, 302 Mont. 288, 14 P.3d 456. One exception to the warrant requirement is an officer's brief investigatory stop of a vehicle (*Terry* stop).  Such a stop is justified when the officer has particularized suspicion that an occupant of that vehicle is currently or has previously been involved in criminal activity. *State v. Gopher,* 193 Mont. 189, 194, 631 P.3d 293, 296 (1981).  Section 46-5-401, MCA, provides that the purpose of a *Terry* stop is to "obtain or verify an account of the person's

4

presence or conduct or to determine whether to arrest the person," and that the officer may "request the person's name and present address and an explanation of the person's actions."

¶9 Particularized suspicion exists when there is specific, articulatable, and objective data from which an experienced police officer can make a rational inference that an individual has previously or is currently engaged in criminal activity. *City of Missoula v. Kroschel,* 2018 MT 142, ¶ 11, 391 Mont. 457, 419 P.3d 1208; *Gopher*, 193 Mont. at 193, 631 P.2d at 296; *Elison*, ¶ 15. Existence of particularized suspicion is "'a factually driven inquiry dependent upon the totality of the circumstances giving rise to the investigative stop' [and] requires more than a mere hunch or good faith belief that the person is . . . engaged in criminal activity." *State v. Roberts,* 2025 MT 110, ¶ 15, 422 Mont. 109, 569 P.3d 524 (quoting *State v. Roberts,* 1999 MT 59, ¶ 13, 293 Mont. 476, 977 P.2d 974). The court "should consider the quantity, or content, and quality, or degree of reliability, of the information available to the officer" when evaluating the totality of the circumstances. *State v. Pratt,* 286 Mont. 156, 161, 951 P.2d 37, 40 (1997).

¶10 Here, Officer Guerrero initially stopped Stewart because he observed that her vehicle closely resembled the vehicle photographed leaving the scene of the church vandalism, especially due to the distinctiveness of the markings near the taillight and the "blacked-out wheels." A rational inference can be made that Stewart's vehicle was connected to the vandalism incident. Stewart contends that "[m]erely observing a white Chevrolet Lumina is not enough to create a particularized suspicion of wrongdoing," but fails to consider that Officer Guerrero's suspicion arose due to the distinctive features of the vehicle, not simply the make and color. Although it is possible that Stewart's vehicle

5

and the photographed vehicle are two different vehicles of the same type with closely similar unique features, it is rational to infer that they are the same. Furthermore, it is reasonable to infer that a person habitually drives the same vehicle, or at least that they could provide information about others who drive that vehicle.

¶11 The instant case is analogous to *Stanley*. There, officers searching for a suspect reported to be wearing a distinctive "Carrot Top" wig conducted a *Terry* stop on an individual who was wearing such a wig, even though they quickly discovered that the stopped individual was not the sought-after suspect. We determined that the officers had particularized suspicion to conduct the *Terry* stop, as the distinctiveness of the wig could lead to a reasonable inference that the individual had recent contact with the suspect. *Stanley,* ¶ 32. Here, Officer Guerrero specifically articulated that the distinct features of Stewart's vehicle, namely the "blacked-out wheels" and the markings next to the taillight, lead to his inference that Stewart's vehicle and the photographed vehicle were the same. As in *Stanley,* it was the observation of distinct features connected to previous criminal behavior which established particularized suspicion, not observation of any immediate criminality. *Stanley*, ¶ 32.

¶12 Stewart characterizes her stop by Officer Guerrero as based upon a "hunch" that her vehicle looked "suspicious," and argues that Officer Guerrero had observed no wrongdoing by Stewart before stopping her. That Officer Guerrero had no direct observations of criminality is not dispositive, as a *Terry* stop may be effectuated upon particularized suspicion that a person *had previously* been involved in criminal activity. *Gopher,* 193 Mont. at 193, 631 P.2d at 296; *see also Pratt,* 286 Mont. at 161, 951 P.2d at 40.

6

Furthermore, Officer Guerrero did not stop Stewart on the basis that she might have committed an unspecified crime; rather, her vehicle matched the vehicle associated with a known, specific, previous crime. Stewart cites to *State v. Reeves*, 2019 MT 151, 396 Mont. 230, 444 P.3d 394, as analogous to the instant case. There, we held that "When the only basis for suspecting a specific person of wrongdoing is inferences that could be drawn from the conduct of virtually any law-abiding person, the resulting suspicion cannot, by definition, be particularized." *Reeves,* ¶ 13. Here, however, Stewart's conduct does *not* comport with that of "virtually any law-abiding person," as her vehicle matches one associated with a known, specific instance of criminal activity. It was not necessary for Officer Guerrero to observe Stewart break any laws because the similarity of the vehicle's appearance to the photographs gave him a rational basis to infer that Stewart had broken a law on a previous, particular occasion.

¶13 Stewart further argues that a mismatch between the license plate on the vehicle on the evening of her arrest and the photographed license plate preclude Officer Guerrero from stopping her based on lack of particularized suspicion. However, the officer who posted the photographs of the vehicle to the police message board specifically noted that the "[vehicle] has fictions [sic] plates." The fictitious plates support that there was particularized suspicion.

¶14 Moreover, Officer Guerrero became aware of the methamphetamine pipe on the floor of Stewart's vehicle before he was able to fully question Stewart regarding the original purpose of the stop, the vandalism of the church. At that point, the scope of the investigation ripened into a new one regarding dangerous drugs, for which the

7

methamphetamine pipe provided clear particularized suspicion. Given that he had not yet completed the purpose defined by § 46-5-401, MCA, of "obtain[ing] or verify[ing] an account of the person's presence or conduct," Officer Guerrero could not have unjustifiably lengthened the initial stop. Officer Guerrero's discovery of the pipe was incidental (as it was in plain view) and occurred during the initial vandalism investigation. For the stop to have been illegally lengthened, the pipe's discovery must have occurred outside this initial investigatory scope. *See State v. Noli,* 2023 MT 84, ¶¶ 46, 47, 412 Mont. 170, 529 P.3d 813.

¶15 We conclude that the District Court did not err in finding that particularized suspicion existed to perform a *Terry* stop and investigation of Stewart.

**Authorization by Probation to Search**

¶16 Probation is considered a form of punishment and, accordingly, a probationer has a reduced right to liberty and privacy than the typical citizen. *State v. Brooks,* 2012 MT 263, ¶ 14, 367 Mont. 59, 289 P.3d 105. Because of this diminished expectation of privacy, a probationer must submit to a warrantless search of their person or vehicle when a probation officer has reasonable cause to search. Admin. R. M. 20.7.1101(7) (2008); *State v. Roper,* 2001 MT 96, ¶ 12, 305 Mont. 212, 26 P.3d 741; *State v. Burchett,* 277 Mont. 192, 195, 921 P.2d 854, 856 (1996). Furthermore, "A probation and parole officer may authorize a law enforcement agency to conduct a search, provided the probation and parole officer determines reasonable suspicion exists that the offender has violated the conditions of supervision." Admin. R. M. 20.7.1101(7) (2008). "Whether reasonable grounds exist to conduct a probationary search is a factual inquiry determined by the totality of the

8

circumstances." *State v. Fischer,* 2014 MT 112, ¶ 11, 374 Mont. 533, 323 P.3d 891. A probationer "must comply with all municipal, county, state, and federal laws and ordinances and shall conduct himself/herself as a good citizen." Admin. R. M. 20.7.1101(8) (2008).

¶17 Stewart contends that "even absent the unlawful initial stop . . . [Officer Guerrero] had no lawful basis to look inside [Stewart's] vehicle in the first instance," as Officer Guerrero did not have reasonable cause to conduct a probationary search. This assertion does not comport with the totality of the circumstances. Officer Guerrero became aware that Stewart was driving on a suspended license upon first contacting her, a violation of the terms of Stewart's probation and Admin. R. M. 20.7.1101(8) (2008). He was informed by Probation shortly thereafter that Stewart had not been checking in as required. Finally, the presence of the pipe in plain view on the vehicle's floor indicated a high probability that Stewart was illegally using methamphetamine, again violating the terms of her probation. Officer Guerrero only began the search once he became aware of these facts and received authorization from Probation. These circumstances indicate a likelihood that Stewart had violated her probation, and thus provided reasonable cause to search Stewart.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶19 Affirmed.

/S/ LAURIE McKINNON

9

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ INGRID GUSTAFSON